CITY OF DAYTON *v.* SUTHERLAND.

(No. 362684—Decided October 28, 1974.)

Dayton Municipal Court.

*Mr. Steven Milby*, for plaintiff.
*Mr. Gus Niarchos*, for defendant.

MITCHELL, J. The defendant is before the court charged as an habitual alcoholic offender under Section 931-1 of the general ordinances of the city of Dayton, Ohio. To said charge defendant filed a motion to dismiss alleging the following:

1. That chronic alcoholism is a sickness and disease and not a crime.

2. Jailing and fining of chronic alcoholic offenders is cruel and unusual punishment and, thereby, prohibited by the Eighth Amendment to the United States Constitution and Section 9, Article 1 of the Ohio Constitution.

3. Section 931-1, the habitual-offenders law relating to intoxication, is void, invalid and unconstitutional, both under the federal and Ohio Constitutions.

4. There are proper facilities within Dayton, Montgomery County, Ohio, where chronic alcoholics may be

taken by police authorities, or ordered sent by the Municipal Court under new state of Ohio alcoholic statutes and/or sent to those facilities not covered by the new state of Ohio alcoholic statutes.

Defendant was joined in his motion to dismiss by the brief and memorandum of the Riff Raff Club as amicus curiae.

This defendant and each of the defendants involved in these matters are well known to the court for the frequency in which they have appeared charged with intoxication. Therefore, upon request, defendant was referred to the Dayton Mental Health Center for observation and evaluation pursuant to R. C. 2945.40.

A ruling on this motion has been held in abeyance many months by this court with the hope that the state of Ohio through the Department of Health would provide a regional alcoholic treatment and control center for this area pursuant to R. C. 3720.01 through 3720.04, but since it appears that a treatment center for this area is not imminent, the court is constrained to render a decision herewith.

Section 931-1 of the codified ordinances of the city of Dayton, Ohio, the municipal ordinance which the action herein was bottomed upon, reads as follows:

"Every person who, after having been five (5) times convicted and sentenced within a two-year period for violation of either Section 3773.22, Revised Code of Ohio, or Section 931, Code of General Ordinances, relating to intoxication, shall be convicted within the same two-year period of a sixth or subsequent such offense, whether committed in violation of said statute or ordinance, shall, upon conviction for such offense be held and deemed to be an habitual offender and shall be imprisoned in the workhouse for a period of not less than thirty (30) days nor more than six (6) months. In all such cases the Court may also order that the offender stand committed to such workhouse until the costs of prosecution are paid. The fact of at least five (5) former convictions and sentences shall be set forth in the affidavit charging such habitual offense."

Defendant has developed four grounds of attack to

support his motion to dismiss; however, the greater thrust of defendant's arguments are directed toward the constitutionality of the ordinance involved, the gravamen of which contends that chronic alcoholism is a sickness and not a crime, and that the jailing and/or fining of an alcoholic under the offending ordinance is impermissible under the constitutional provision against cruel and unusual punishment.

The Supreme Court in the early case of *Weems* v. *United States* (1910), 217 U. S. 349, established the guidelines for the application of the cruel and unusual punishment prohibition. The court enunciated said doctrine, at page 378, as follows:

"'* * * [The constitutional prohibition] is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice.''

It appears to be well settled that the forward thinking in this country has recognized the view that alcoholism is a sickness and not a crime. The American Medical Association identifies alcoholism as follows:

"Alcoholism is a complex disease with biological, psychological and sociological components. Alcoholism is an illness characterized by preoccupation with alcohol and loss of control over its consumption such as to lead usually to intoxication if drinking is begun, by chronicity, by progression; and by tendency toward relapse. It is typically associated with physical disability and impaired emotional, occupational, and/or social adjustments as a direct consequence of persistent and excessive use of alcohol."

Central to our theme, a comprehensive article appeared in annotation, 40 A. L. R. 3d 321, 324, which restates and supports the proposition that alcoholism is a disease. This authority further recognizes the inability of the criminal justice system to effectively cope with the problems of the alcoholic and suggests medical and sociological alternatives to the problem rather than process through the criminal justice system.

Pertinent parts of said article are as follows:

"The proposition that chronic alcoholism is a disease and that such fact could have implications with respect to criminal liability appears to be of recent origin. The report of the Task Force on Drunkenness of the President's Commission on Law Enforcement and Administration of Justice (1967) revealed that one of every three arrests in America (1965) was for the offense of public drunkenness and that the great volume of these arrests placed an extremely heavy load on the operations of the criminal justice system, burdening the police, clogging lower criminal courts, and crowding penal institutions throughout the country." The report further stated "that the criminal justice system appeared ineffective to deter drunkards or to meet the problems of the chronic alcoholic offender, and that as presently constituted, the system was not in a position to meet the alcoholic's underlying medical and social problems. The President's Commission recommended that drunkenness should not be a criminal offense; that disorderly conduct and other criminal conduct accompanied by drunkenness should remain as separate crimes; and that criminal prosecution of publicly intoxicated persons be replaced with a comprehensive program for treating and rehabilitating such persons * * *."

The United States Supreme Court in the case of *Robinson* v. *California* (1962), 370 U. S. 660, a case in which the court concluded that narcotic addiction is an illness, held, at page 666, in pertinent part, as follows:

"It is unlikely that any state at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A state might determine that the general health and welfare require that the victims of these and other afflictions be dealt with by compulsory treatment, involving quarantine, confinement or sequestration. But in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. * * *"

The doctrine in the *Robinson* case, *supra,* was adopted in a District of Columbia case in which the issue of chronic alcoholism was raised as a defense to the charge of public intoxication. In *Easter* v. *District of Columbia* (C. A. D. C. 1966), 361 F. 2d 50, the U. S. Court of Appeals concluded that chronic alcoholism is a defense to the charge of public intoxication and not in and of itself a crime. The court further decided that a chronic alcoholic may in a judge's discretion be committed for treatment or be released, but may not be punished. The court, in examining the rehabilitative features of the case, stated that one who has committed no crime cannot be validly sentenced as a criminal because of a lack of rehabilitative and caretaking facilities.

It is well settled that alcohol can be addicting that one who has become addicted to alcohol can become an involuntary drinker. This addiction-chronic alcoholism is now universally accepted medically as a disease. The symptoms appear as a disorder of behavior characterized by unwilled appearances in public with actions inconsistent with the norm.

The defendant in the instant case is well known to the court due to the numerous appearances before the court charged with intoxication, and the court finds that defendant's appearances in public in an intoxicated condition are unwilled, that based upon the evaluation made upon defendant at the Dayton Mental Health Center the court concludes that defendant is a chronic alcoholic. Therefore, the court adopts the doctrines as pronounced in the *Robinson* and *Easter* cases, and, specifically finds that chronic alcoholism is a disease and not a crime, and that to jail the defendant, a diseased person, would be cruel and unusual punishment in contravention of the Eighth Amendment to the United States Constitution. Accordingly, we find that Section 931-1 of the general ordinances of the city of Dayton, relating to habitual intoxication is unconstitutional and invalid.

It is apparent that the immediate effect of this decision could have repercussions on the victims of chronic alcoholism. However, the alcoholics' dilemma will not be amelio-

rated, nor will an enlightened society be served, by continuing to process the chronic alcoholic through the criminal justice system. Without adequate sentencing alternatives at the judges' disposal, the criminal justice system can act only as an inept custodian with little hope for deterrance or rehabilitation.

This decision is not to be interpreted as an invalidation of Section 931, the general ordinance against intoxication.

*Motion sustained and case dismissed.*