City of BROOK PARK, Appellee,

v.

DANISON, Appellant.

[Cite as *Brook Park v. Danison* (1996), 109 Ohio App.3d 529.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69034.

Decided Feb. 26, 1996.

*Neal M. Jamison,* Brook Park Assistant Law Director, for appellee.

*Wargo and Wargo, Marie M. Rady* and *Adam M. Fried,* for appellant.

JAMES D. SWEENEY, Presiding Judge.

Defendant–appellant Walter C. Danison, Jr. appeals from the court's sentence of the minimum actual incarceration of fifteen days after having pled no contest to, and been convicted of, operating a motor vehicle while under the influence of alcohol and/or drugs in violation of R.C. 4511.19(A)(1).[1] For the reasons adduced below, we affirm.

A review of the record on appeal indicates that the defendant on December 26, 1994, ran a red light, was involved in an auto accident and attempted to flee the scene of that accident before being arrested at the scene. The defendant refused to submit to both blood and breath testing. See R.C. 4511.191.

On February 6, 1995, the defendant changed his plea of not guilty to no contest. Following the preparation of a presentence investigation report, the court conducted the sentencing hearing on April 19, 1995. At the close of the hearing, the court sentenced the defendant to the following: (1) a fine of $2,500 plus court costs, (2) one hundred eighty days in jail, of which ninety days are suspended, (3) one hundred fifty days of electronically monitored house arrest with work[2] and therapy privileges during the days Monday through Saturday, (4) driver's license suspended for five years, (5) active probation for five years, (6) fifteen days of actual jail confinement, and (7) eighty hours of community service work after jail and house arrest are completed.[3] See the version of the penalties statute, R.C. 4511.99(A)(3), in effect subsequent to June 23, 1994 and prior to

---

**1.** A charge of driving under a suspended license was nolled.

**2.** Defendant is a licensed attorney.

**3.** The record indicates that defendant had three convictions for driving under the influence in 1990, one in 1987, and one in 1984.

May 1, 1995, specifically Am.Sub.H.B. No. 381, 145 Ohio Laws, Part III, 5699, 5702.

The lone assignment of error provides the following:

"The Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment and Article I, Section 9 of the Ohio Constitution, forbids the imposition of cruel and unusual punishment."

Appellant argues that the fifteen-day period of incarceration constitutes cruel and unusual punishment as applied to him by virtue of his particular medical history. Appellant believes that he is being incarcerated because he has a mental illness.

At the sentencing hearing, the court questioned the offender's witness, Pat Malloy, a psychotherapist/social worker/chemical dependency counselor who first counseled the defendant in 1993. Malloy stated that defendant was an alcoholic who began drinking alcohol when he was approximately thirty-five to forty years old. This alcoholism stems from his recent diagnosis of post-traumatic stress disorder ("PTSD"), which causes defendant to involuntarily lapse into states of disassociation, which have been described as flashbacks to unpleasant childhood events and mental blackouts for extended periods of time. The PTSD was alleged to have been triggered when the defendant recently became aware of, allegedly, having been sexually abused as an adolescent. Malloy claimed that PTSD caused defendant to drink alcoholic beverages in excessive amounts and drive a vehicle while under the influence of alcohol, so as to ameliorate the unwanted stress and anxieties associated with the PTSD. Malloy also stated that the defendant's disassociative states, which are brought about by extreme stress, have not always involved the use of alcohol. It was Malloy's belief that any period of incarceration would constitute cruel and unusual punishment as it would increase the likelihood of disassociation and further retraumatize the defendant because the confinement would heighten defendant's sense of being trapped, a sense allegedly common to persons who have been sexually abused.[4]

In addressing the appellant's Eighth Amendment argument, we note:

"[T]he Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes, *e.g.*, *Estelle v. Gamble, supra; Trop v. Dulles, supra;* second, it proscribes punishment grossly disproportionate to the severity of the crime, *e.g., Weems v. United States, supra;* and third, it imposes substantive limits on what can be made criminal and punished as such, *e.g.*,

---

4. The defendant admitted to the court that he had previously spent a total of ten days in jail over a period of four weekends, presumably for past convictions involving drinking while driving.

*Robinson v. California, supra.*"[5]  *Ingraham v. Wright, supra,* 430 U.S. at 667, 97 S.Ct. at 1410, 51 L.Ed.2d at 727–728.

Appellant uses a shotgun approach to his legal argument, incorporating each of the three standards enunciated in *Ingraham.* In reviewing appellant's argument, we note that appellant, in reliance on *Estelle v. Gamble, supra,* frames his argument in terms of whether the fifteen-day sentence is proportionate to the crime of which he has been convicted. At the same time appellant, relying on *Solem v. Helm* (1983), 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (a sentence of life imprisonment without possibility of parole under a state recidivist statute for the offense of uttering a no account check in the amount of $100 held to be significantly disproportionate to the severity of the crime and therefore constitutes cruel and unusual punishment), argues that the sentence herein was grossly disproportionate to the severity of his crime. See also, *Weems v. United States, supra.* Finally, in apparent reliance on *Robinson v. California, supra,* and *Dayton v. Sutherland* (1974), 42 Ohio Misc. 35, 71 O.O.2d 313, 328 N.E.2d 416 (conviction under a criminal ordinance for being a habitual alcoholic offender held to constitute cruel and unusual punishment), appellant argues that he was sentenced "to prison on the basis of * * * chronic illness" (in reference to PTSD), and that on this basis of allegedly suffering from a chronic illness, confining appellant "to prison for even one day * * * is * * * cruel and unusual punishment." The common denominator which courses through each of these subarguments is that the punishment imposed is cruel and unusual as applied to a person with his particular infirmity. To sustain this common denominator, it is appellant's steadfast belief that he was punished for the crime of having a mental illness.

This belief of appellant, that he was punished for having a mental illness, is a ruse which confuses the matter. Appellant was not punished for the offense of having a mental illness. Instead, appellant was punished, for the sixth time since 1984, for the offense of having driven an automobile while under the influence of alcohol. In placing the true offense in proper context, the cases relied upon by appellant are easily distinguished from the present case, as those cases (1) rely upon excessive punishment in relation to the minimal nature of the offense to prove disproportionality or (2) provide punishment for offenses which make

---

5. See *Estelle v. Gamble* (1976), 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (incarceration without medical care); *Trop v. Dulles* (1958), 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (expatriation for desertion); *Weems v. United States* (1910), 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (fifteen years' imprisonment and other penalties for falsifying an official document); *Robinson v. California* (1962), 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (incarceration as a criminal for addiction to narcotics). The explanations following each of these citations were provided in *Ingraham v. Wright* (1977), 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711.

criminal a physical malady or disease. In light of the human carnage and severe financial costs imposed on society by drunk drivers, the punishment of fifteen days' imprisonment cannot seriously be interpreted as disproportionate to the severity of the offense, particularly when the trial court could have imposed an actual term of imprisonment of thirty days to one year had the court not, in its leniency and discretion, imposed the fifteen days and electronically monitored house arrest on the repeat offender before us. See the version of R.C. 4511.99(A)(3)(a) in effect at the time of the court's sentencing. This sentence by the trial court, which falls within the range of punishments contained within the valid punishment statute, does not shock the conscience of this panel, let alone the conscience of the community, particularly where there is no evidence to suggest that his medical needs will not be met during his incarceration. Accordingly, the punishment imposed cannot be deemed to be cruel and unusual punishment. See *State v. O'Shannon* (1988), 44 Ohio App.3d 197, 200–201, 542 N.E.2d 693, 696–697, citing *State v. Juliano* (1970), 24 Ohio St.2d 117, 53 O.O.2d 307, 265 N.E.2d 290, and *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46.

The assignment of error is overruled.

*Judgment affirmed.*

PORTER and DYKE, JJ., concur.